MADSEN, J.
*785 ¶ 1 This case involves statutory interpretation concerning application of the reporting requirements contained in the Fair Campaign Practices Act (FCPA), chapter 42.17A RCW. The specific issue is how the FCPA reporting requirements in RCW 42.17A.255 and the definition in RCW 42.17A.005(4) ("ballot proposition")[1] are to be *786 applied in the context of local initiatives. For the reasons explained below, we hold that under the circumstances of this case, pro bono legal services, which Evergreen Freedom Foundation provided to initiative proponents, were reportable to the Public Disclosure Commission *808 (PDC) under the above noted statutes. We affirm the Court of Appeals' reversal of the trial court's CR 12(b)(6) dismissal of the State's FCPA regulatory enforcement action and remand to the trial court for further proceedings.
FACTS
¶ 2 In 2014, Evergreen Freedom Foundation (EFF) staff created sample municipal ordinances and ballot propositions for citizens to use to advance certain causes to their local city councils or commissions. Local residents in the cities of Sequim, Chelan, and Shelton utilized those samples in filing two ballot propositions in each city, one to require collective bargaining negotiation sessions to be publicly conducted and the second to prohibit union security clauses in city collective bargaining agreements.
¶ 3 The proponents submitted the proposed measures to their local city clerks along with signatures they had gathered in support of the measures. They asked their respective city councils or commissions either to pass the measures as local ordinances or, if the councils or commissions did not agree, to alternatively place each measure on the local ballot for a vote. None of the cities passed the measures as ordinances or placed the ballot propositions on the local ballots.[2]
*787 ¶ 4 In response, EFF employees, who are attorneys, participated in lawsuits against each jurisdiction on behalf of the local resident proponents. Each suit sought a judicial directive to the respective city to put each measure on the local ballot. Each lawsuit ended in a superior court dismissing the case, and those decisions were not appealed.
¶ 5 EFF did not file any campaign finance disclosure reports with the PDC identifying the value of the legal services it provided to the resident proponents in support of the local ballot propositions.[3] In February 2015, the attorney general received a citizen action complaint about EFF's failure to report the value of legal services it provided in support of these local ballot measures.[4] The State conducted an investigation and then filed a civil regulatory enforcement action against EFF in Thurston County Superior Court, alleging that EFF failed to report independent expenditures it made in support of the noted local ballot propositions.[5]
¶ 6 EFF moved to dismiss the State's enforcement action, asserting that the local propositions were not "ballot propositions" as defined in RCW 42.17A.005(4). Clerk's Papers at *788 24. EFF argued that because the local initiative process generally requires signatures to be gathered and submitted before the ballot propositions are filed with the local elections official, the local propositions were not "ballot propositions" under RCW 42.17A.005(4) and, therefore, no disclosure was required unless and until the proposition became a "measure" placed on a ballot. Id. at 19-33.
¶ 7 The State opposed the motion and the statutory interpretation asserted by EFF. The State argued that EFF's reading of the *809 statute would effectively exclude from public disclosure all funds raised and spent on local ballot propositions until they advanced to the ballot, contrary to the stated purpose and intent of the FCPA.
¶ 8 The superior court granted EFF's motion for dismissal under CR 12(b)(6) (failure to state a claim). It found the statutes at issue here to be "ambiguous and vague." Verbatim Report of Proceedings at 23. The superior court further found that the State had not "sufficiently established that this situation involved a ballot measure that gave them the opportunity to require that such be reported," explaining that "such" meant "legal services that were provided on a pro bono basis before the matter ever went to any kind of vote." Id. at 23-24.
¶ 9 The State sought direct review and this court transferred the case to Division Two of the Court of Appeals. Order, State v. Evergreen Freedom Found., No. 93232-8, 2017 WL 1177091 (Wash. Mar. 29, 2017). The Court of Appeals reversed, holding in a partially published opinion that "under the only reasonable interpretation" of the definition of "ballot proposition" in the FCPA, the local initiatives qualified as ballot propositions at the time EFF provided legal services because the initiatives had been filed with local election officials. State v. Evergreen Freedom Found., 1 Wash. App. 2d 288, 293, 404 P.3d 618 (2017) (published in part). The Court of Appeals also rejected EFF's argument that reporting requirements could apply only to electioneering that occurs once a proposition has been placed on the ballot. Id. at 306, 404 P.3d 618.
*789 The court concluded that RCW 42.17A.255 does not violate EFF's First Amendment rights. Id. at 307, 404 P.3d 618. In the unpublished portion of the opinion, the Court of Appeals rejected EFF's other arguments, including that the statute is unconstitutionally vague. Evergreen Freedom Found., No. 50224-l-II, slip op. (unpublished portion) at 22-24, http://www.courts.wa.gov/opinions/pdf/D2%2050224-l-II%20Published%20Opinion.pdf. EFF petitioned for review, which this court granted. State v. Evergreen Freedom Found., 190 Wash.2d 1002, 413 P.3d 11 (2018).
ANALYSIS
Standard of Review
¶ 10 This court reviews issues of statutory construction and constitutionality de novo. State v. Evans, 177 Wash.2d 186, 191, 298 P.3d 724 (2013) ; Columbia Riverkeeper v. Port of Vancouver USA, 188 Wash.2d 421, 432, 395 P.3d 1031 (2017). When possible, this court derives legislative intent from the plain language enacted by the legislature; "[p]lain language that is not ambiguous does not require construction." Evans, 177 Wash.2d at 192, 298 P.3d 724. However, if more than one interpretation of the plain language is reasonable, the statute is ambiguous, and the court must then engage in statutory construction. Id. at 192-93, 298 P.3d 724. The court may then look to legislative history for assistance in discerning legislative intent. Id. at 193, 298 P.3d 724.
¶ 11 In construing a statute, the fundamental objective is to ascertain and carry out the people's or the legislature's intent. See Lake v. Woodcreek Homeowners Ass'n, 169 Wash.2d 516, 526, 243 P.3d 1283 (2010). This court looks to the entire " 'context of the statute in which the provision is found, [as well as] related provisions, amendments to the provision, and the statutory scheme as a whole.' " State v. Conover, 183 Wash.2d 706, 711, 355 P.3d 1093 (2015) (quoting *790 Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wash.2d 342, 350, 340 P.3d 849 (2015) ); see also G-P Gypsum Corp. v. Dep't of Revenue, 169 Wash.2d 304, 310, 237 P.3d 256 (2010) ("enacted statement of legislative purpose is included in a plain reading of a statute").
The meaning of words in a statute is not gleaned from [the] words alone but from "all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another."
Burns v. City of Seattle, 161 Wash.2d 129, 146, 164 P.3d 475 (2007) (internal quotation marks omitted) (quoting State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994) ); see *810 also Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 11, 43 P.3d 4 (2002) (clarifying "plain meaning" is "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question").
FCPA Background and Application
¶ 12 In 1972, voters in Washington adopted Initiative 276 (1-276), which established the PDC and formed the basis of Washington's campaign finance laws. Voters Educ. Comm. v. Pub. Disclosure Comm'n , 161 Wash.2d 470, 479, 166 P.3d 1174 (2007). I-276 is codified in portions of chapter 42.17A RCW, which is now known as the FCPA. RCW 42.17A.909. I-276 was designed, in part, to provide the public with full disclosure of information about who funds initiative campaigns and who seeks to influence the initiative process. See LAWS OF 1973, ch. 1, § 1. In I-276, the people declared that it would be
the public policy of the State of Washington:
(1) That political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided.
....
*791 (10) That the public's right to know of the financing of political campaigns and lobbying and the financial affairs of elected officials and candidates far outweighs any right that these matters remain secret and private.
(11) ... The provisions of this act shall be liberally construed to promote complete disclosure of all information respecting the financing of political campaigns and lobbying.
LAWS OF 1973, ch. 1, § 1 (emphasis added); see also RCW 42.17A.001(1), (10), (11). With a 72 percent supporting vote, Washington voters adopted I-276 and required financial disclosure for campaigns, including those related to initiatives, referenda, and ballot measures. Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 996 (9th Cir. 2010).
¶ 13 I-276 established reporting requirements for anyone supporting or opposing a "ballot proposition." LAWS OF 1973, ch. 1, §§ 2(2), 10(1); see also id. §§ 3-11 (I-276 provisions establishing reporting requirements); RCW 42.17A.255. For example, an " 'independent expenditure' [is] any expenditure that is made in support of or in opposition to any candidate or ballot proposition and is not otherwise required to be reported." RCW 42.17A.255(1) (emphasis added). Reporting requirements are triggered once an expenditure amount crosses a threshold of $100. RCW 42.17A.255(2).[6]
¶ 14 I-276 defined "ballot proposition" to mean "any 'measure' as defined by [former] R.C.W. 29.01.110, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of any specific constituency which has been filed with the appropriate election officer of that constituency. " LAWS OF 1973, ch. 1, § 2(2) (emphasis added). When I-276 was adopted in 1972, "measure" meant "any proposition or question submitted to the voters of any *792 specific constituency." LAWS OF 1965, ch. 9, § 29.01.110; former RCW 29.01.110 (1972).[7]
¶ 15 In 1975, soon after the adoption of I-276, the legislature made adjustments to the definition of "ballot proposition" to clarify that the term applied to both statewide and local initiatives, recalls, and referenda:
"Ballot proposition" means any "measure" as defined by [former] RCW 29.01.110, or *811 any initiative, recall, or referendum proposition proposed to be submitted to the voters of ( (any specific) ) the state or any municipal corporation, political subdivision or other voting constituency ( (which) ) from and after the time when such proposition has been initially filed with the appropriate election officer of that constituency prior to its circulation for signatures.
LAWS OF 1975, 1st Ex. Sess., ch. 294, § 2(2). Thus, the 1975 legislature clarified that "ballot proposition" includes local propositions "from and after the time when such proposition has been initially filed with the appropriate election officer ... prior to its circulation for signatures."[8] Id.
¶ 16 As noted, the 1975 legislature added the language in the definition that refers specifically to "any municipal corporation, political subdivision or other voting constituency." Id. It simultaneously added "prior to its circulation for signatures." Id.
¶ 17 The issue here is that the procedures for statewide and local initiatives differ. For a statewide initiative, many steps have to be navigated before the signature gathering stage is reached: the proponent files the proposed initiative with the secretary of state ( RCW 29A.72.010 ), the code *793 reviser reviews and then certifies that (s)he has reviewed the proposed measure and suggested revisions to the proponent ( RCW 29A.72.020 ), then the secretary of state gives the proposed measure a serial number ( RCW 29A.72.040 ), then the attorney general formulates a ballot title and summary ( RCW 29A.72.060 ), and any person dissatisfied with the title or summary may appeal to the superior court ( RCW 29A.72.080 ); after all that, the proponent then begins gathering signatures ( RCW 29A.72.090 -.150). See generally RCW 29A.72.010 -.150. If an initiative to the people has sufficient valid signatures, it goes on the ballot at the next general election. CONST. art. II, § 1. If an initiative to the legislature has sufficient valid signatures, it is presented to the legislature first, but if the legislature declines to adopt it, the initiative appears on the following general election ballot. Id. § 1(a).
¶ 18 For a local initiative, the proponent generally gathers signatures and submits them along with the proposed ballot measure to the local election official. See RCW 35.17.260. If the petition contains the required number of valid signatures, the city's or the town's council or commission must either pass the proposed ordinance or submit the proposition to a vote of the people.[9] Id.
¶ 19 Thus, RCW 42.17A.005(4) 's language fits neatly with the statewide initiative procedures, but it creates tension as to the noted local initiative procedures in that the second prong of RCW 42.17A.005(4) expressly applies to both state and local initiatives, but its final phrase, "before its circulation for signatures," seems at odds with the local initiative procedures noted above.
*794 ¶ 20 The State argues that "[p]re-amendment, the definition already incorporated propositions as soon as they were filed and it already incorporated signature gathering for state initiatives, so there was no need to add the phrase 'prior to circulation for signatures' unless the legislature intended to clarify that the definition also covers the signature-gathering period for local propositions."[10] State of *812 Washington's Suppl. Br. at 9. In the State's view, the amendment "ensured the statute would be applied according to the people's purpose: full and complete public disclosure of expenditures related to ballot propositions, including those made before a proposition appears on the ballot." Id. This is a fair and plain reading of the above statute, giving effect to all its parts. And, as importantly, the State's reading of the statute comports with the FCPA's stated policy and express directive that its provisions be "liberally construed to promote complete disclosure of all information respecting the financing of political campaigns." RCW 42.17A.001(11) ; see Campbell & Gwinn, 146 Wash.2d at 11, 43 P.3d 4 (plain meaning is discerned from all that the legislature has said in the statute and related statutes); see also Filo Foods, LLC v. City of SeaTac, 183 Wash.2d 770, 792-93, 357 P.3d 1040 (2015) (this court assumes the legislature does not intend to create inconsistency and, thus, reads statutes together to achieve a harmonious total statutory scheme that maintains each statute's integrity).
¶ 21 EFF counters that the plain language of the statute controls, arguing that because the signatures were already gathered when the proposed initiatives were filed with the local election officials, the definition of "ballot proposition" is not met and no reporting requirement is triggered. But *795 this reading not only undermines the stated purpose of the FCPA, it also ignores the language added to RCW 42.17A.005(4) in 1975 that expressly applies that provision to local initiatives.
¶ 22 EFF further contends that RCW 42.17A.005(4) and RCW 42.17A.255(1)"apply only to electioneering," which EFF contends never occurred here because the local initiatives were never placed on the ballot. EFF Suppl. Br. at 11 (emphasis omitted). First, EFF's reliance on Brumsickle as supporting EFF's contention is misplaced. That case did not so hold. See id. (misquoting Brumsickle, 624 F.3d at 998 ). Further, as noted, both statutes at issue here broadly impose reporting requirements concerning "any expenditure that is made in support of or in opposition to any candidate or ballot proposition ," RCW 42.17A.255(1) (emphasis added), with "ballot proposition" defined to include "any initiative ... proposed to be submitted to the voters." RCW 42.17A.005(4) (emphasis added). The noted language is simply not restricted to electioneering, as EFF asserts. Moreover, where litigation is being employed as a tool to block adoption of an initiative or to force an initiative onto the ballot, as was attempted here, the finances enabling such support (or opposition) would indeed appear to fall within the "any expenditure," triggering the reporting obligation noted above. The contention that litigation support does not qualify as a reportable independent expenditure ignores the express purpose of the FCPA in the context of modem politics. See, e.g ., Huff v. Wyman, 184 Wash.2d 643, 645, 361 P.3d 727 (2015) (litigation brought by initiative opponents seeking to enjoin placement of initiative on the ballot); Filo Foods, LLC v. City of SeaTac, 179 Wash. App. 401, 403, 319 P.3d 817 (2014) (litigation over whether a local minimum wage initiative qualified for the ballot).[11]
*796 ¶ 23 In sum, giving meaning to all of the language in RCW 42.17A.005(4) and complying with the FCPA's directive for liberal construction, we determine that the amended *813 language in RCW 42.17A.005(4) was intended to pick up the expenditures prior to signature gathering, regardless of when they are gathered, but only if the measure is actually filed with an election official. Applying this holding here, and in light of the FCPA's history, purpose, and the particular facts of this case, EFF's pro bono legal services were reportable to the PDC under RCW 42.17A.255 and RCW 42.17A.005(4).
The FCPA Provisions Are Not Unconstitutionally Vague
¶ 24 EFF contends that RCW 42.17A.255(1) and RCW 42.17A.005(4) are unconstitutionally vague because "[n]o reasonable person can know how to conform to the applicable statutory requirements." EFF Suppl. Br. at 16-17. We disagree.
¶ 25 Statutes are presumed to be constitutional, and the party asserting that a statute is unconstitutionally vague must prove its vagueness beyond a reasonable doubt. Voters Educ. Comm., 161 Wash.2d at 481, 166 P.3d 1174. In the First Amendment context, the asserting party may allege that a statute is either facially invalid or invalid as applied. Am. Legion Post No. 149 v. Dep't of Health, 164 Wash.2d 570, 612, 192 P.3d 306 (2008). A facial challenge asserts that the statute cannot be properly applied in any context. City of Spokane v. Douglass, 115 Wash.2d 171, 182 n.7, 795 P.2d 693 (1990). In an as applied challenge, the statute must be considered in light of the facts of the specific case before the court. Am. Legion Post, 164 Wash.2d at 612, 192 P.3d 306.
*797 ¶ 26 " 'A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. The purpose of the vagueness doctrine is to ensure that citizens receive fair notice as to what conduct is proscribed, and to prevent the law from being arbitrarily enforced.' " In re Contested Election of Schoessler, 140 Wash.2d 368, 388, 998 P.2d 818 (2000) (internal quotation marks omitted) (quoting Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739-40, 818 P.2d 1062 (1991) ). However, vagueness is not simply uncertainty as to the meaning of a statute. Am. Legion Post, 164 Wash.2d at 613, 192 P.3d 306. In determining whether a statute is sufficiently definite, the provision in question must be considered within the context of the entire enactment and the language used must be afforded a sensible, meaningful, and practical interpretation. Id. "A court should not invalidate a statute simply because it could have been drafted with greater precision." Id. Moreover, " 'a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which [that person's] actions would be classified as prohibited conduct.' " Schoessler, 140 Wash.2d at 389, 998 P.2d 818 (alteration in original) (quoting City of Seattle v. Eze, 111 Wash.2d 22, 27, 759 P.2d 366 (1988) ).
¶ 27 A statute's language is sufficiently clear when it provides explicit standards for those who apply them and provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Voters Educ. Comm., 161 Wash.2d at 489, 166 P.3d 1174. Here, EFF contends that the definition of "ballot proposition" cannot apply to local initiatives and the obligation to report independent expenditures cannot apply to activities beyond electioneering. But those assertions are refuted by the statutory language as discussed herein. As explained above, a local initiative becomes a ballot proposition when it is filed with local elections officials, and here all of the initiatives in question were filed before EFF expended resources to support them.
*798 RCW 42.17A.005(4). Accordingly, the portions of the FCPA at issue here ( RCW 42.17A.255 and .005(4) ) are not unconstitutionally vague as applied. Likewise, there is no facial invalidity because the statutes at issue establish a clear course of conduct, requiring persons to report their independent expenditures. Any nonexempt independent expenditures in support of a ballot proposition must be reported under RCW 42.17A.255. EFF has not shown that there is no set of facts, including the circumstances here, in which the statute could not be constitutionally applied. Douglass, 115 Wash.2d at 182 n.7, 795 P.2d 693. We hold that RCW 42.17A.005(4) and RCW 42.17A.255 are not unconstitutionally vague.
*814 The FCPA Provisions Do Not Violate the First Amendment
¶ 28 EFF contends that the "State's enforcement action impermissibly infringes on the Foundation's [First Amendment] free speech and privacy of association rights." EFF Suppl. Br. at 21; U.S. CONST . amend. I. We disagree.
¶ 29 In addressing a First Amendment challenge to the "independent expenditure" provision of the FCPA at issue here, the Ninth Circuit Court of Appeals concluded in Brumsickle, 624 F.3d at 994-95, that "Washington State's disclosure requirements do not violate the First Amendment." The Ninth Circuit court noted that the Supreme Court had concluded that "the government 'may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether.' " Id. at 994 (quoting Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 319, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) ). "[A] campaign finance disclosure requirement is constitutional if it survives exacting scrutiny , meaning that it is substantially related to a sufficiently important governmental interest." Id. at 1005 (emphasis added). As the Citizens United Court held, " '[D]isclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities and do not *799 prevent anyone from speaking.' " Id. (internal quotation marks and citation omitted) (quoting Citizens United, 558 U.S. at 366, 130 S.Ct. 876 ). Accordingly, "exacting scrutiny applies in the campaign finance disclosure context." Id. (citing Citizens United, 558 U.S. at 366-67, 130 S.Ct. 876 ; Doe v. Reed, 561 U.S. 186, 196, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010) ; Davis v. Fed. Election Comm'n, 554 U.S. 724, 728-30, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ).
¶ 30 In explaining the governmental interest at stake, the Brumsickle court noted that providing information to the electorate is "vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment." Id. Such vital provision of information has been repeatedly recognized as "a sufficiently important, if not compelling, governmental interest." Id. at 1005-06. The Ninth Circuit expounded on the importance of disclosure regarding candidates, and then drew parallels regarding ballot measures.
[D]isclosure provides the electorate with information "as to where political campaign money comes from and how it is spent by the candidate" in order to aid the voters in evaluating those who seek federal office. It allows voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches. The sources of a candidate's financial support also alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office.
Id. at 1006 (alteration in original) (quoting Buckley v. Valeo , 424 U.S. 1, 66-67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ).
¶ 31 Relevant here, the court observed that such considerations apply equally for voter-decided ballot measures. Id. "In the ballot initiative context, where voters are responsible for taking positions on some of the day's most contentious and technical issues, '[v]oters act as legislators,' while 'interest groups and individuals advocating a measure's defeat or passage act as lobbyists.' " Id. (quoting *800 Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1106 (9th Cir. 2003) ). The "high stakes of the ballot context only amplify the crucial need to inform the electorate that is well recognized in the context of candidate elections." Id.
Campaign finance disclosure requirements ... advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas. An appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another. The increased "transparency" engendered by disclosure laws "enables the electorate to make informed decisions and give proper weight to different speakers and messages."
*815 Citizens United, [558 U.S. at 371, 130 S.Ct. 876 ]. As the Supreme Court has stated: "[T]he people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate." [ First Nat'l Bank v. Bellotti , 435 U.S. 765, 791-92, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ]. Disclosure requirements, like those in Washington's Disclosure Law, allow the people in our democracy to do just that.
Id. at 1008 (third alteration in original). The Brumsickle court concluded that "[t]here is a substantial relationship between Washington State's interest in informing the electorate and the definitions and disclosure requirements it employs to advance that interest." Id. at 1023 ; see also Voters Educ. Comm., 161 Wash.2d at 483, 166 P.3d 1174 (the right to free speech held by organizations that engage in political speech includes a "fundamental counterpart" that is the public's right to receive information); State ex rel. Pub. Disclosure Comm'n v. Permanent Offense, 136 Wash. App. 277, 284, 150 P.3d 568 (2006) ("Washington State has a substantial interest in providing the electorate with valuable information about who is promoting ballot measures and why they are doing so[;] ... it is particularly important ... that voters know whether other influences-particularly money-are *801 affecting those who are otherwise known as grass-roots organizers.").
¶ 32 Given the State's important governmental interest in informing the public about the influence and money behind ballot measures, as noted above, and the FCPA's vital role (via application of RCW 42.17A.255 and RCW 42.17A.005(4) ) in advancing that interest, the disclosure requirement that operates under these statutes satisfies the exacting scrutiny standard. Accordingly, there is no impermissible infringement of EFF's First Amendment rights, and we so hold.
CONCLUSION
¶ 33 We affirm the Court of Appeals' reversal of the trial court's CR 12(b)(6) dismissal of the State's regulatory enforcement action under the FCPA. Under the circumstances of this case, EFF's pro bono legal services were reportable to the PDC under RCW 42.17A.255 and RCW 42.17A.005(4). Those statutes are not unconstitutionally vague, nor does their application here violate EFF's First Amendment rights. We remand to the trial court for further proceedings.
WE CONCUR:
Fairhurst, C.J.
Owens, J.
Wiggins, J.
Yu, J.

The FCPA was amended twice in the recent legislative session. Laws of 2018, chapter 111 does not take effect until January 1, 2019. Laws of 2018, chapter 304 took effect June 7, 2018, but the amendments to RCW 42.17A.255 in that bill were vetoed. The amendments otherwise added a definition unrelated to this case, but resulted in the "ballot proposition" definition at issue here to be renumbered as RCW 42.17A.005(5). To avoid confusion, and to remain consistent with the parties' briefing, we refer to the relevant definitional subsection addressing "ballot proposition" by its former designation as RCW 42.17A.005(4).

The cities of Chelan and Shelton voted to neither adopt the propositions nor place them on the ballot. The city of Sequim concluded that it would table the issue until a later meeting but never acted further.

As discussed below, the FCPA, RCW 42.17A.255, requires a person (organization) to file a report with the PDC disclosing all "independent expenditures" totaling $ 100 or more during the same election campaign. RCW 42.17A.255(2). Subsection (1) of that statute defines "independent expenditure" as "any expenditure that is made in support of or in opposition to any candidate or ballot proposition." RCW 42.17A.255(1). "Ballot proposition" is defined in RCW 42.17A.005(4) as
any "measure" as defined by RCW 29A.04.091 [i.e., "any proposition or question submitted to the voters"], or any initiative, recall, or referendum proposition proposed to be submitted to the voters of the state or any municipal corporation, political subdivision, or other voting constituency from and after the time when the proposition has been initially filed with the appropriate election officer of that constituency before its circulation for signatures.
(Emphasis added.)

The letter was filed on behalf of the Committee for Transparency in Elections and contained notice that if the State did not take action within 45 days, the complainant intended to file a citizen's action against EFF "as authorized under [RCW] 42.17A.765(4)." Clerk's Papers at 65.

No other citizen action complaints related to these local ballot propositions have been filed with the Attorney General's Office.

As originally adopted in I-276, this provision was worded differently, but it reflected the same intent: "Any person who makes an expenditure in support of or in opposition to any candidate or proposition (except to the extent that a contribution is made directly to a candidate or political committee), in the aggregate amount of one hundred dollars or more during an election campaign, shall file with the [PDC] a report." Laws of 1973, ch. 1, § 10(1).

In 2003, the legislature removed the last phrase of the definition of "measure," so that the term now includes "any proposition or question submitted to the voters." Laws of 2003, ch. 111, § 117. Former RCW 29.01.110 is now codified as RCW 29A.04.091.

The definition of "ballot proposition" has since been updated to reflect the current codification of the definition of "measure" and to replace "prior to" with "before," but it otherwise remains the same today. RCW 42.17A.005(4) ; see Laws of 2010, ch. 204, § 101(4).

See also RCW 35.17.240 -.360 (authorizing cities using the commission form of government to adopt the initiative and referendum processes); RCW 35A. 11.100 (authorizing same processes for noncharter code cities); Sequim Municipal Code 1.15 (adopting the initiative and referendum processes set forth in RCW 35A.11.080 -.100); Shelton City Code 1.24.010 (adopting the initiative and referendum processes in chapter 35.17 RCW, via adoption of chapter 35A.11 RCW); cf. Chelan Municipal Code 2.48.050-.210 (providing for the initiative process), .080 (providing sponsors with an extended 90-day window within which to gather sufficient valid signatures after the initiative is initially submitted).

As noted, the original definition of "ballot proposition" in the FCPA included "any initiative ... proposed to be submitted to the voters of any specific constituency which has been filed with the appropriate election officer of that constituency." Laws of 1973, ch. 1, § 2(2). For statewide initiatives, this definition already incorporated the signature-gathering phase because, for a statewide initiative, the sponsor must file the proposed initiative before circulating it for signatures. See RCW 29A.72.010 -.150 (discussed above).

EFF cites Coloradans for a Better Future v. Campaign Integrity Watchdog, 2018 CO 6, 409 P.3d 350, as supporting its viewpoint, but that case is inapposite. The court there held that uncompensated legal services to a political organization were "not 'contributions' to a political organization under Colorado's campaign-finance laws." Id. at ¶ 41. But that determination turned on application of specific statutory language that is not. present here. Id. at ¶¶ 28-40.
EFF also cites to Farris v. Seabrook, 677 F.3d 858 (9th Cir. 2012), but that case is also inapposite. There, the Ninth Circuit Court of Appeals affirmed the grant of a preliminary injunction barring enforcement of a statute that imposed contribution limits regarding a political (recall) committee. But that case applied a different standard in the contributions limitations context (i.e., applying "closely drawn" scrutiny to contribution limits based on a First Amendment challenge). Id. at 865 n.6. As discussed below, that is not the appropriate standard here.