**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In re the Marriage of<br><br>MATTHEW WILLIAM EZELL,<br><br>         Appellant,<br><br>and<br><br>AUDREY LEIGH CAVINS-EZELL,<br><br>         Respondent. | No. 86739-3-I<br>(consolidated with No. 86740-7-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Matthew William Ezell appeals various orders issued by the trial court regarding a dissolution of marriage proceeding involving his ex-spouse, Audrey Leigh Cavins-Ezell. He asserts numerous arguments, ranging from the trial court's purported reliance on unsupported findings of psychological aggression in formulating the parties' parenting plan to alleged violations of his constitutional rights. Because Ezell has not established an entitlement to relief, we affirm. We also deny his request for attorney fees on appeal.

I

Ezell and Cavins[1] married in 2016 and have two young children. While living in Kentucky, police were called to their family home twice due to alleged

---

[1] This opinion refers to the respondent herein as Cavins and utilizes male pronouns with regard to Cavins because that is how he self-identifies in his brief of respondent.

domestic violence. In 2020, the family moved from Kentucky to Washington, seeking better employment and healthcare opportunities. After moving to Washington, the police were called to the family home on multiple occasions due to concerns of domestic violence. Cavins and Ezell would regularly argue about housework and money. They would sometimes argue in front of their children, occasionally waking them from sleep.

On January 24, 2022, Cavins and the two children left the family home to stay at a domestic violence shelter. Soon after, Cavins filed a petition for a domestic violence protection order (DVPO) against Ezell, alleging that Ezell took money without asking, tracked Cavins' location by phone, withheld medical care, drove under the influence with the children in the vehicle, slammed Cavins to the ground, choked Cavins, hit the children, made verbal threats toward Cavins, engaged in sexually inappropriate behavior, and threatened Cavins with further violence. The trial court entered a one-year DVPO against Ezell, granting Cavins temporary custody of the children and Ezell visitation by video. Ezell filed a motion for revision of the DVPO, which was denied.

On May 25, 2022, Cavins contacted police to report that Ezell forwarded Cavins a bill via e-mail in violation of the DVPO. Three days later, Ezell filed for divorce. Two months after, Cavins filed another report with the police because it appeared that someone had tried to break into his garage and car. In the report, Cavins noted that Ezell "has a garage door opener to[o] and will not give [it] back." On February 6, 2023, Cavins filed a motion to renew the DVPO, alleging that Ezell may have broken into Cavins' home, had engaged in sexually inappropriate

behavior, was unlawfully watching the children through home security cameras, had caused an auto accident while driving the children, and may be using drugs and alcohol. The trial court renewed the DVPO for another year. Ezell again filed a motion to revise this renewal order, which was denied.

Ezell and Cavins' dissolution proceedings began on February 27, 2024 and ended on March 6, 2024. Ezell, Cavins, the children's guardian ad litem, Ezell's domestic violence treatment assessor, and Ezell's mother testified during the proceedings. Ezell admitted to using marijuana from 2019 to 2022 but denied using it since. During the cross examination of Cavins, Ezell's counsel played three videos of Cavins hitting himself in the face. An image of Cavins' bloodied face that Cavins had previously submitted as evidence that Ezell hit him appeared to be a screenshot from one of these videos. During his later testimony, Ezell requested that the DVPO be realigned so that he would be the protected party.

The trial court declined to renew the DVPO against Ezell; while it noted that Cavins and Ezell were both perpetrators of domestic abuse, it found that this conduct was unlikely to recur following dissolution of the marriage. The trial court granted Cavins major decision-making authority and made him the "custodian" of the children "solely for the purpose of all state and federal statutes which require a designation or determination of custody," though the children would live with Ezell for part of the week as well. Ezell appeals.

II

A.    <u>Findings of Psychological Aggression and Parenting Plan Limitations</u>

Ezell argues that the trial court's findings in the denial order, dissolution findings and conclusions, and parenting plan that he engaged in psychological aggression are not supported by substantial evidence.  He makes this argument even though the trial court declined to renew the DVPO against him because, under RCW 26.09.191(1)(c),[2] parenting plans must be limited when previous findings of abuse exist against a parent.  Thus, Ezell contends that the limitations of the parenting plan are erroneous because they are based on unsupported findings of abuse.  Contrary to Ezell's argument, substantial evidence supports the challenged findings.

Under RCW 7.105.010(4)(a), "psychological aggression" is a form of "coercive control," which in turn is a form of abuse as outlined in the statute. "Psychological aggression" includes "inflicting fear, humiliating, degrading, or punishing the other party."  RCW 7.105.010(4)(a)(vi).  We review the trial court's findings of such aggression for substantial evidence.  *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). "Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise."  *Id.*  In reviewing the record, we defer to the trial court's determinations on "the persuasiveness of the evidence, witness

---

[2] Updated versions of RCW 26.09 and RCW 7.105 took effect in July 2025.  Because the trial court decisions were entered in 2024, we apply the prior versions of the statutes here.

credibility, and conflicting testimony." *In re Vulnerable Adult Pet. For Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Here, substantial evidence supports the trial court's finding that Ezell had engaged in psychological aggression by degrading, punishing, and inflicting fear in Cavins. Ezell degraded Cavins by disparaging him in discussions with their children. Ezell punished Cavins by blocking communication between Cavins and the children when the children were in Ezell's care. Ezell also inflicted fear in Cavins by threatening that he would retain both their home and custody of their children if Ezell filed for divorce. As such, substantial evidence supports the trial court's finding that Ezell had engaged in psychological aggression.

Having rejected Ezell's argument that the findings of abuse are not supported by substantial evidence, we likewise reject his argument that the trial court erroneously limited his decision-making in the parenting plan. "We review the trial court's parenting plan decisions for abuse of discretion." *French v. French*, 32 Wn. App. 2d 308, 314, 557 P.3d 1165 (2024). "And while the trial court has broad discretion in the context of a parenting plan, its discretion must be exercised within the confines of applicable statutes." *Id.* "An abuse of discretion occurs if the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons." *Id.* at 314-15. "A decision is based on untenable grounds or reasons if it is factually unsupported or was reached by applying an incorrect legal standard." *Id.*

In the parenting plan, the court noted that "[m]ajor decision-making must be limited because one of the parents has problems as described in 3.a above." In

section 3.a of the parenting plan, the trial court found that "BOTH parents, Matthew Ezell and Avery Cavins-Ezell (or someone living in that parent's home) has a history of domestic violence as defined in RCW 7.105.010." Under RCW 26.09.191(1)(c), the trial court must order sole decision-making if it is found that a parent has a history of domestic violence. *In re Parenting & Support of C.A.S.*, 25 Wn. App. 2d 21, 28-29, 522 P.3d 75 (2022). When a finding of domestic violence is entered against a parent, that parent is not barred from *any* decision-making; they simply cannot engage in *mutual* decision-making. *See DeVogel v. Padilla*, 22 Wn. App. 2d 39, 46, 509 P.3d 832 (2022).

Here, to meet the statutory requirements, the trial court had to limit major decision-making to one parent to ensure that Cavins and Ezell did not engage in mutual decision-making. Though the trial court gave Cavins the authority to make major decisions, it provided Ezell with decision-making authority as well. Not only must Cavins provide Ezell with notice of all major decisions, but Ezell can make day-to-day decisions for the children when they are in his care. Further, both Cavins and Ezell "shall have independent access to communicate with the children's school and [the] children's teachers" and "access to the children's school records, medical and counseling records, therapy records, and all other records related to the children." The trial court correctly concluded that Cavins and Ezell cannot engage in mutual decision-making based on the statutory requirements and reasonably allocated decision-making authority. Thus, the trial court did not abuse its discretion.

B.      Constitutional Claims

Ezell also asserts various constitutional arguments.  First, he claims the definition of psychological aggression in RCW 7.105.010(4)(a)(vi) is void for vagueness. "'A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 797, 432 P.3d 805 (2019) (quoting *In re Contested Election of Schoessler*, 140 Wn.2d 368, 388, 998 P.2d 818 (2000)).  "The purpose of the vagueness doctrine is to ensure that citizens receive fair notice as to what conduct is proscribed, and to prevent the law from being arbitrarily enforced." *Id.*  "[T]he constitution does not require 'impossible standards of specificity' or 'mathematical certainty' because some degree of vagueness is inherent in the use of our language. Thus, a vagueness challenge cannot succeed merely because a person cannot predict with certainty the exact point at which conduct would be prohibited." *State v. Riles*, 135 Wn.2d 326, 348, 957 P.2d 655 (1998) (quoting *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993)).  "For a statute to be unconstitutional, its terms must be 'so loose and obscure that they cannot be clearly applied in any context.'" *State v. Alphonse*, 142 Wn. App. 417, 437, 174 P.3d 684 (2008) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 182 n.7, 795 P.2d 693 (1990)).  "We review whether a statute is unconstitutionally vague de novo as a question of constitutional law." *Dep't of Soc. & Health Servs. v. Zamora*, 198 Wn. App. 44, 71, 392 P.3d 1124 (2017).

Ezell claims RCW 7.105.010(4)(a)(vi) is unconstitutionally vague because "[t]he ordinary man does not have fair notice of what constitutes inflicting fear, humiliation, degrading, or punishment" and "[t]he emotional range of people varies." Ezell provides no legal authority in support of this assertion, which alone is dispositive. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *Better Bus. Bureau Great W. v. Dep't of Revenue*, 32 Wn. App. 2d 748, 763, 561 P.3d 266 (2024) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)); *see also* RAP 10.3(a)(6). In any event, the terms fear, humiliation, degrading, and punishment are neither loose nor obscure and are included in the statute to further define the phrase "psychological aggression." RCW 7.105.010(4)(a)(vi). A person of common intelligence would not need to guess at their meaning. *Evergreen Freedom Found.*, 192 Wn.2d at 797. Ezell's vagueness argument fails.

Second, Ezell asserts that his due process rights were violated by the trial court proceedings below because RCW 7.105 does not permit a trial court to vacate a DVPO entered in a prior proceeding. This argument ignores the available procedure to seek review of such a ruling. It is the role of this court, not the trial court, to review trial court decisions. RAP 2.4(a). Under RAP 5.2(a)(1), a litigant seeking appellate review of a trial court's decision has "30 days after the entry of the decision" to file a notice of appeal. By failing to file a notice of appeal within 30 days of entry of such a decision, a litigant waives their right to challenge the decision. *See In re J.R.H.*, 83 Wn. App. 613, 616, 922 P.2d 206 (1996). Ezell did

not appeal the initial DVPO or its first renewal, which would have provided him the opportunity to argue that those decisions should be reversed or vacated by this court. Ezell's due process argument easily fails.

C.      Unsupported Arguments

Ezell raises several additional issues that are not supported by adequate argument. "[T]his court will not review issues for which inadequate argument has been briefed or only passing treatment has been made*." State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004) (citing *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); *State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995)). We decline to address several such arguments as follows.

Ezell argues that, because the trial court entered findings that Cavins had a history of engaging in domestic violence, it necessarily erred when it did not enter a DVPO against Cavins. RCW 7.105.225(5) provides that "[i]f the court declines to issue a protection order, the court shall state in writing the particular reasons for the court's denial." Consistent with RCW 7.105.225(5), the trial court stated its reasons for declining to issue a DVPO against Cavins; it reasoned "that the acts of abuse the Court found the restrained party proved by a preponderance of the evidence are not likely to reoccur as they are related to coercive control and emotional abuse only during the marriage." Though Ezell assigns error to the trial court's analysis, the entirety of this argument is set forth in his statement of facts and any purported "argument" is devoid of meaningful analysis.

We similarly decline to review Ezell's claims regarding abusive litigation, the trial court's reliance on exhibit 210, and residential time. Similar to Ezell's

argument regarding the trial court's purported failure to enter a DVPO against Cavins, these assignments of error are unsupported by argument, incorrectly argued in the statement of facts without citation to legal authority, or both. RAP 10.3(a)(5). As such, these arguments similarly fail.

III

Lastly, Ezell argues that he is entitled to attorney fees on appeal. We disagree.

RCW 26.09.140 permits a court to award fees to the prevailing party in a family law case after considering the financial resources of the parties. *In re Marriage of Hannah and McAdams*, 27 Wn. App. 2d 577, 591, 541 P.3d 372 (2023). In determining whether a fee award is appropriate pursuant to the statute, we consider both the parties' relative ability to pay and the arguable merit of the issues raised on appeal. *In re Marriage of Leslie and Verhey*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).

Here, none of Ezell's arguments have merit, and many of his arguments are unsupported by legal authority. After considering Ezell's arguments and the parties' relative ability to pay, we exercise our discretion under RCW 26.09.140 to deny Ezell's request for attorney fees on appeal.

Affirmed.

_Feldman, J._

WE CONCUR:

_Chung, J._          _Smith, J._

- 10 -