# NOTICE:  SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 1, 2021

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 1, 2021

_Susan L. Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Recall of | ) | No. 99089-1 |
| | ) | |
| KSHAMA SAWANT, City of Seattle | ) | |
| Councilmember, | ) | En Banc |
| | ) | |
| Appellant. | ) | Filed: April 1, 2021 |
| | ) | |

MADSEN, J.—Kshama Sawant has served on the Seattle City Council since 2013. Ernest H. Lou, among others, have filed recall charges alleging that Councilmember Sawant delegated city employment decisions to a political organization outside city government (delegation charge), Councilmember Sawant used city resources to promote a ballot initiative and failed to comply with public disclosure requirements (ballot initiative charge), Councilmember Sawant disregarded state orders related to COVID-19 (coronavirus disease 2019) and endangered the safety of city workers and other individuals by admitting hundreds of people into Seattle City Hall while it was closed to the public (city hall charge), and Councilmember Sawant led a protest march to Mayor Jenny Durkan's private residence, the location of which Councilmember Sawant knew

No. 99089-1

was protected under state confidentiality laws (protest charge).[1] The trial court found these charges factually and legally sufficient for recall. For the reasons discussed below, we affirm the trial court in part and reverse in part. Additionally, Councilmember Sawant challenges the ballot synopsis, which we decline to address because RCW 29A.56.140 provides that "[a]ny decision regarding the ballot synopsis by the superior court is final."

ANALYSIS

All elected public officials in Washington State, except for judges, are subject to recall for malfeasance, misfeasance, or violation of their oath of office. WASH. CONST. art. I, §§ 33-34; RCW 29A.56.110. RCW 29A.56.110 defines malfeasance, misfeasance, and violation of the oath of office:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
> (b) Additionally, "malfeasance" in office means the commission of an unlawful act.
> (2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

"An elected official can be recalled only for cause, meaning the [recall] petition must be factually and legally sufficient." *In re Recall of Inslee*, 194 Wn.2d 563, 567, 451 P.3d 305 (2019) (citing *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)).

---

[1] The petitioners conceded that two of the charges were legally insufficient. The superior court, agreeing with the petitioners, dismissed these two charges. 1 Clerk's Papers at 197-98.

2

No. 99089-1

The reviewing court's role in a recall petition is limited. The court does not evaluate the truthfulness of the charges; rather, it verifies that the charges are factually and legally sufficient on the face of the petition before the charges reach the electorate. *In re Recall of Boldt*, 187 Wn.2d 542, 548, 386 P.3d 1104 (2017); *see also In re Recall of Zufelt*, 112 Wn.2d 906, 914, 774 P.2d 1223 (1989). The court's inquiry is designed "to ensure that the recall process is not used to harass public officials by subjecting them to frivolous or unsubstantiated charges." *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005). It is up to the voters to determine whether the charges are true and, if so, whether they in fact justify recalling the official. *In re Recall of Jenny Durkan*, 196 Wn.2d 652, 663, 476 P.3d 1042 (2020); *Boldt*, 187 Wn.2d at 549.

A reviewing court "must accept the allegations as true and determine whether the charges on their face support the conclusion that the officer abused his or her position." *Inslee*, 194 Wn.2d at 568. The superior court makes the initial sufficiency determination, which is subject to review by this court. RCW 29A.56.140. This court evaluates the sufficiency of a recall petition de novo. *Teaford v. Howard*, 104 Wn.2d 580, 590, 707 P.2d 1327 (1985).

A charge is factually sufficient when the facts establish a prima facie case of the elected official's misfeasance, malfeasance, or violation of oath of office; are stated in concise language; and provide a detailed description to enable the electorate and the challenged official to make informed decisions. *Inslee*, 194 Wn.2d at 567-68. Additionally, for a recall charge to be legally sufficient "it [has to] define[] 'substantial

3

No. 99089-1

conduct clearly amounting to misfeasance, malfeasance or a violation of the oath of office' and there is no legal justification for the challenged conduct." *Id.* at 568 (quoting *In re Recall of Wasson*, 149 Wn.2d 787, 791-92, 72 P.3d 170 (2003)). If a legal justification exists for the challenged action, the charge is not sufficient. *In re Recall of Wade*, 115 Wn.2d 544, 549, 799 P.2d 1179 (1990).

Taken as a whole, a recall petition "'must be specific enough to give the elected official meaningful notice of the particular conduct challenged and why it is grounds for recall.'" *Inslee*, 194 Wn.2d at 567 (internal quotation marks omitted) (quoting *In re Recall of Pepper*, 189 Wn.2d 546, 553, 403 P.3d 839 (2017)). It is this court's responsibility to confirm the individuals presenting the charges have "'some knowledge of the facts underlying the charges.'" *Boldt*, 187 Wn.2d at 548 (quoting *Wasson*, 149 Wn.2d at 791). The recall petitioners bear the burden of identifying the "'standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful.'" *Inslee*, 194 Wn.2d at 568 (internal quotation marks omitted) (quoting *Pepper*, 189 Wn.2d at 555). When a charge contends that the elected official disregarded the law, the facts must show the official had the intent to do so. *Id*.

Delegation of City Employment Decisions to a Political Organization

Petitioners allege that Councilmember Sawant "[d]elegated city employment decisions to a political organization [(Socialist Alternative Party)] outside city government." 1 Clerk's Papers (CP) at 2. The statement of charges allege,

In Councilmember Sawant's case, the media has uncovered documents suggesting that she may have effectively delegated decisions regarding the

4

No. 99089-1

> hiring and termination of City of Seattle employees to an outside political organization. According to documents, the National Executive Committee, and the Seattle Executive Committee [(SEC)] of the Socialist Alternative Party had authority over staffing decisions for her City of Seattle Council Office. At least one employee was allegedly fired as a result of a decision of the Executive Committee of this political organization, and that employee protested that the firing was the result of retaliation. Councilmember Sawant willfully and intentionally violated her duties under Seattle Charter Art. IV, Title 4, Sections 2 and 4 and the Seattle Municipal Code Ch. 4.16 (Code of Ethics).

3 CP at 248. The trial court found this charge factually and legally sufficient.

### A. Factual Sufficiency

Prior to this recall petition being filed, members of the public brought similar charges against Councilmember Sawant to the Seattle Ethics and Elections Commission (SEEC). The SEEC interviewed Councilmember Sawant. "[S]he told [the committee] that the SEC does not take votes on matters coming before the City Council." 1 CP at 47. Councilmember Sawant acknowledged, while "she consults with the SEC, . . . she could not recall a single instance where she had taken an official action as a City Councilmember with which she disagreed because the SEC had directed her to do so." *Id*. She describes informing the SEC of her "decision to dismiss the staff members . . . [and] that she thought [it was proper to fire this staff member]." *Id*. She states that she "ultimately persuaded the SEC to side with her opinion." *Id*. The SEEC dismissed the charges because it concluded that "elected officials are free to structure their decision-making processes as they wish." *Id*.

5

Similar to the charges brought to the SEEC, the petitioners here accuse Councilmember Sawant of delegating her hiring and firing decisions to the Socialist Alternative.

In a series of letters and internal documents exchanged between Councilmember Sawant and the Socialist Alternative, Councilmember Sawant discussed the strides she made to be accountable to her political party.

In a letter titled "Concerns Regarding Worsening Situation in the Seattle Leadership," dated October 28, 2017, to the SEC of the Socialist Alternative, Councilmember Sawant responded to Socialist Alternative members accusing her of a lack of accountability to the party. She refuted the idea that her office had failed to communicate or to be accountable to the Socialist Alternative party's SEC membership. In acknowledging the importance of communication between her and her party, she stated, "[She takes] great pains to include and consult the full SEC" and errs "on the side of taking political questions to the SEC." 1 CP at 143. However, she also stated in this letter that she "cannot always inform the SEC of every detail or involve comrades on every question." *Id.*

In response to the above letter, another member acknowledged "it is the purview of the EC [(Executive Committee)] and NC [(National Committee)] comrades leading the Council work (Kshama and Adam) to make decisions about staffing [Sawant's City Council] office, and that they need to be free to create a team they have the utmost

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99089-1

confidence in to work within the extremely high-pressure, fast-paced, politically complicated environment of City Hall." *Id*. at 157.

Following this letter, in December 2017, the National Socialist Alternative Party adopted a resolution by the International Executive Committee. The resolution settled that "[Kshama Sawant (KS) was not] . . . unaccountable [to the party] or ha[d] conducted her work in an unaccountable manner." *Id*. at 146. It further noted that "the running and staffing of KS's office in Seattle [will] be agreed by the national EC of the organisation in consultation with KS." *Id*. at 146-47.

Soon after this resolution, Councilmember Sawant fired a staff member in her office. Around January 2018, another internal struggle ensued over the firing of this staff member. Some members felt the firing of the staff member needed to be voted on prior to the decision being carried out, and they vocalized their displeasure in a letter to the Executive Committee. Two Executive Committee Socialist Alternative members wrote a response to this allegation, saying that in their—and most of the Executive Committee's—view the Executive Committee does not need to have a full discussion regarding where the full-time staff could be placed prior to letting them go. These Executive Committee members note that another member of Councilmember Sawant's staff also wrote a letter to the Executive Committee explaining Councilmember Sawant's reasoning for firing the employee. However, the members went on to say that it was the Executive Committee, not the staff member, who made the decision to terminate the staff member at issue in Councilmember Sawant's office.

7

No. 99089-1

The trial judge found this charge factually and legally sufficient, reasoning that the SEEC decision supplements the fact that Councilmember Sawant "had to persuade the SEC to concur with her decision to fire an employee, not simply ask advice." 2 CP at 202. The judge concluded that regardless of whether Councilmember Sawant is a member of the Socialist Alternative, she delegated her decision-making authority to the Socialist Alternative party. The judge did not find the SEEC opinion, dismissing similar charges, persuasive. The trial court, citing to Seattle Municipal Code (SMC) 4.16.020 and 4.16.070(3), found that a reasonable person could conclude that Councilmember Sawant's judgment was impaired by a personal or business relationship.

This charge, on its face, is factually sufficient to support the inference that Councilmember Sawant delegated personal or council chambers hiring/firing determinations to the Socialist Alternative. The National Socialist Alternative Committee's resolution lends itself to this determination, writing the International Executive Committee agreed that the running and staffing of Councilmember Sawant's office would be conducted with the National Executive committee in consultation with her. We find the charge is factually sufficient.

B. Legal Sufficiency

Article IV of the Seattle City Charter sets out the powers and duties of a councilmember. SEATTLE CITY CHARTER art. IV, §§ 2, 4. An elected official's conduct violates the Seattle Ethics Code when they "[p]erform any official duties [that could] appear to a reasonable person, having knowledge of the relevant circumstances, that the

8

No. 99089-1

covered individual's judgment is impaired because of . . . a personal or business relationship." SMC 4.16.070(A)(3). This provision applies to "any City officer [or employee]." SMC 4.16.030.

The petitioners contend Councilmember Sawant's decision-making violated the Seattle Ethics Code, SMC 4.16.070(A)(3), through delegating her decision-making authority in her official capacity, which "'impaired [her judgment] because of . . . a personal or business relationship.'" Resp'ts' Answering Br. at 10, 11-12 (second alteration in original) (quoting SMC 4.16.070(A)(3)). The petitioners maintain that Councilmember Sawant's delegation of discretionary employment decisions to the Socialist Alternative amounted to "'misfeasance, malfeasance, and violation of [her] oath of office under the cited Seattle Municipal Code of Ethics.'" *Id*. at 9.

Councilmember Sawant argues that the ethics code does not prohibit her from consulting with outside advisors regarding the operations of her city council office. She argues that SMC 4.16.070(A)(3) exists to prevent personal or business relationships that create the appearance of corruption in an elected official's official duties. She also notes that the SEEC found that she did not abuse her elected position by allowing the Socialist Alternative to advise her.

Albeit in a different circumstance, *Osborn v. Grant County*, 130 Wn.2d 615, 926 P.2d 911 (1996), provides a helpful discussion of why elected officials' internal office decisions regarding hiring and firing of employees are theirs alone to make. In that case, the elected Grant County clerk, Dedra Osborn, hired Shirley Keenan as a temporary

9

employee in the clerk's office for 10 days. *Id*. at 618. Keenan, prior to working at the

clerk's office, worked for the district court. *Id*. However, the district court placed

Keenan on a disciplinary 10-day suspension. *Id*. When the Grant County Board of

Commissioners learned Keenan was working for Osborn, the board sent a letter to

Osborn expressing its displeasure with Osborn's hiring decision and its intent to not pay

Keenan's wages for any hours accrued after Osborn received the letter. *Id*.

Keenan worked the full 10-day period and was paid for only 12 hours of work. *Id*.

Osborn made a request for a pay voucher to the county auditor for Keenan's remaining

wages. *Id*. The auditor responded to Osborn's letter, stating the auditor would not pay

those wages because the board did not approve Osborn's voucher request. *Id*. at 619.

Osborn successfully brought a declaratory judgment action against the board,

asserting her right to hire "whomever she wanted as a temporary clerk." *Id*. The superior

court held that the board did not have the authority to impede Osborn's hiring decisions

and "enjoined the Board from engaging in such future conduct." *Id*. On appeal, the

board, citing RCW 36.16.070, asserted its jurisdiction over Osborn's hiring decision. *Id*.

at 621. At the time *Osborn* was decided, RCW 36.16.070 stated, in part, "'[a] deputy

may perform any act which his principal is authorized to perform. The officer appointing

a deputy or other employee shall be responsible for the acts of his appointees upon his

official bond and may revoke each appointment at pleasure.'" *Id*. (quoting former RCW

36.16.070 (1969)). The court reasoned that that section of RCW 36.16.070 gives a

county officer the authority to hire or fire an employee at their will and does not give a

board a role in hiring decisions. *Id.* at 622. Similarly, SMC 4.16.030 does not purport to limit the authority of a council member to make internal hiring decisions or to consult with others when making such a decision.

Additionally, there is a distinction to be drawn between political parties and business interests. Politicians can and do consult with their political parties through caucusing (meeting with a group of members of a political party). *Washington Legislature 101*, LEAGUE OF EDUC. VOTERS, https://educationvoters.org/resources/washington-legislature-101/ [https://perma.cc/8FDT-W7P2]. Typically, legislators will hold caucus meetings between votes on the legislative floor with their party colleagues in the legislative body. *Id*. During these meetings, members will discuss a variety of matters such as the merits of a bill, strategy, and intended votes. *Id*. Legislators can consult their political parties in their decision-making process; however, they are prohibited from using their positions to engage in business that they might reasonably expect would require them through their official position to disclose confidential information. RCW 42.23.070(3). Absent more, an elected official who consults a political organization regarding an internal chambers hiring does not run afoul of SMC 4.16.070(A)(3).

Just as *Osborn* notes, Councilmember Sawant, as a city of Seattle officer, has the right to structure her internal decision-making process as she wishes. As politicians consult with their political parties to advise them on their internal decision-making

11

processes, Councilmember Sawant was free to consult with the Socialist Alternative and structure her internal office decisions as she saw fit.

Because her decision to fire her staff members, and persuading the Executive Committee to agree with her decision, was related to the internal decision-making processes in her office, we conclude that this charge is not legally sufficient.

Use of City Resources To Support a Ballot Initiative and Failure To Comply with Public Disclosure Requirements Related to Such Support

Petitioners allege that Councilmember Sawant "[u]sed city resources to support a ballot initiative and failed to comply with public disclosure requirements related [to] such support." 1 CP at 2. The statement of charges state,

> Councilmember Sawant has used her official office equipment to promote and raise money for a ballot initiative (or other electioneering), and for failing to comply with public disclosure of all funds raised and spent in those activities[,] including a website registered to her husband and promoted by Councilmember Sawant. The Seattle Election and Ethics Commission (SEEC) and possibly the Public Disclosure Commission (PDC) continue to investigate these violations. This is important for public confidence and because it could also impact the Council's work on proposed related revenue ordinances pending before the Council, as one is explicitly tied to the proposed ballot initiative. The City of Seattle citizens have the right to know that public resources of the Council are not being used in violation of campaign and ethics laws. Councilmember Sawant willfully and intentionally violated her duties under law including RCW 42.17A.55[5] and RCW 42.17A.635, which prohibit the use of public office or agency facilities in campaigns for the promotion of or opposition to any ballot proposition; SMC 2.04.300, which bars the use of City facilities to promote or oppose candidates and ballot measures; and SMC 4.16.070.B.2, which bars the use of City resources for other than City purpose.

3 CP at 249. The trial court found this charge factually and legally sufficient.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99089-1

A.  Factual Sufficiency

By her own admission, Councilmember Sawant spearheaded the "Tax Amazon" campaign.  She held two tax conferences, in January and February 2020, to discuss the ballot initiative.  On January 25, 2020, her office promoted the "Tax Amazon Action Conference" on Facebook.  She stated their "'immediate task [was] to file a grassroots ballot initiative this [February 2020] so that [they could] begin collecting signatures.'"  1 CP at 161-62.  The purpose of the first tax conference was to "come together as a movement to discuss different proposals for an Amazon Tax, including how much it should raise annually, what it should fund and what tax mechanism [they would] use, . . . [and] to organize the grassroots strategy needed to win."  *Id*. at 164.

A committee was formed after the first tax conference, with Councilmember Sawant listed as the committee cochair.  The committee was to form an umbrella 501(c)4, where joint activities could be funded and reported to the attendees of the conference.  It also planned to file a version of the ballot language in advance of the second tax conference, subject to approval of conference attendees.  The committee acknowledged the need to collect signatures to get on the November 2020 ballot, but it "cannot afford to wait before filing the initiative and beginning to gather signatures."  *Id*. at 165-66.

The second tax conference was held on February 9, 2020.  Councilmember Sawant promoted this event through her office, including with posters that displayed her City of Seattle seal.  The initiative, titled "Initiative Measure No. 130 relating to Tax on

13

No. 99089-1

Corporate Payroll for Affordable Green Housing," was filed on March 19, 2020. *Id*. at 69.

On February 10, 2020, the SEEC sent Councilmember Sawant a statement of charges it had received. The charges alleged that the SEEC had "reasonable cause to believe that Councilmember Kshama Sawant ha[d] committed material violations of the Seattle Ethics and Elections Codes," SMC 2.04.300 and SMC 4.16.070(B)(2). *Id*. at 161.

Both the SEEC and the PDC have had open enforcement cases related to Councilmember Sawant and the Tax Amazon campaign. The SEEC has not scheduled a hearing regarding these charges but plans to do so after the COVID-19 restrictions are lifted. Marc Stiles, *González Punts on Mayor's Request To Investigate Sawant*, PUGET SOUND BUS. J. (July 7, 2020, updated 4:09 PM), https://www.bizjournals.com/seattle/news/2020/07/07/gonzalez-punts-mayor-request.html [https://perma.cc/UMV4-2Q5P]. And, the PDC has deferred enforcement of this charge. *Councilmember Sawant, Kshama (3): Alleged Violations of RCW 42.17A.555 for Misuse of Pub. Facilities To Supp. Election Campaigns, or RCW 42.17A.635 for Indirectly Lobbying the Legis.*, PUB. DISCLOSURE COMM'N, https://www.pdc.wa.gov/browse/cases/65026 [https://perma.cc/67HY-7HNA]. The trial court judge found this charge factually and legally sufficient. 2 CP at 205, 208.

Petitioners alleged and provided evidence that Councilmember Sawant, using her staff and office, spent $2,000 in office funds and promoted the ballot initiative by advertising meetings, providing food, and purchasing posters and wood pickets.

14

No. 99089-1

Councilmember Sawant asserts this charge is factually insufficient because the petitioners have not alleged facts suggesting she had reason to know that an unfiled ballot initiative could trigger RCW 42.17A.555 or SMC 2.04.300. Councilmember Sawant also argues that the allegation she violated SMC 2.04.165 was not adequately pleaded in the petition for recall.

The petitioners contend Councilmember Sawant's argument that she did not intend to violate the law fails because she has stated that she "'spearhead[ed]' the Tax Amazon campaign, hosted a conference to file a 'grassroots ballot initiative,' and served as a member of the initiative coordinating committee for the initiative." Resp'ts' Answering Br. at 19 (alteration in original). The petitioners assert that the financial affairs statement Councilmember Sawant signed, failing to disclose her involvement with the Tax Amazon movement, violates SMC 2.04.165.

An elected official's ignorance of the law is not enough to circumvent an elected official's legal responsibilities under SMC 2.04.165. Seattle elected officials are required to file a statement of financial affairs. SMC 2.04.165. These officials are required to disclose their and their immediate family's financial affairs, which include "any legislation . . . [that] has been prepared, promoted, or opposed for . . . [payment]." SMC 2.04.165(B)(1)(e). In this statement, elected officials are required to acknowledge they have read and are familiar with SMC 2.04.300 regarding the use of public facilities in campaigns.

15

No. 99089-1

Elected officials can use public funds for proper purposes, which includes providing or communicating information related to their official work. RCW 42.17A.635(3). However, neither an elected official nor their employees may authorize the use of or use any facilities (or funds) of a public office, in a direct or indirect manner, for the purpose of aiding, promoting, or opposing a ballot proposition. RCW 42.17A.555, .635(3).

Councilmember Sawant argues that her actions do not violate RCW 42.17A.555 because she used funds within her official capacity to communicate and promote information to her constituents about the Tax Amazon conference. Councilmember Sawant is correct that as a politician, she is free to sponsor events using her office and to provide food to constituents. But, by providing picket signs and phone banking for the initiative, her conduct crossed into the territory of promoting a ballot proposition because these are explicit actions taken in support of the ballot proposition. This charge is factually sufficient.

B. <u>Legal Sufficiency</u>

A "ballot proposition" is defined as a "measure, question, initiative, referendum, recall, or Charter amendment submitted to, or proposed for submission to, the voters of the City [of Seattle]." SMC 2.04.010. The Fair Campaign Practices Act, ch. 42.17A RCW, has a more expansive definition of "ballot proposition," which includes

> any initiative, recall, or referendum proposition proposed to be submitted to the voters of the state or any municipal corporation, political subdivision, or other voting constituency from and after the time when the proposition has

16

No. 99089-1

been initially filed with the appropriate election officer of that constituency before its circulation for signatures.

RCW 42.17A.005(4).

A nonrestrictive list of examples of "public office facilities" include "use of stationery, postage, machines, and equipment, use of state employees of the agency during working hours, vehicles, office space, publications of the agency, and clientele lists of persons served by the agency." RCW 42.52.180(1). This would include office staff and budget, as alleged here.

This prohibition does not apply to actions taken at an open public meeting by elected officials to support or oppose a ballot proposition when (1) there is notice of the ballot proposition and (2) elected officials or members of the public are given an equal opportunity to express an opposing view. RCW 42.52.180(2)(a). Statements by an elected official supporting or opposing ballot propositions in an open press conference, responses to specific inquiries, and regularly performed activities of an office are not included in this prohibition. RCW 42.52.180(2)(b). The SMC covers similar prohibitions in the city of Seattle, specifically, "[n]o elected official nor any employee of . . . her office . . . may use or authorize the use of any of the facilities of a public office . . . directly or indirectly, for the purpose of assisting a campaign . . . or for the promotion of . . . any ballot proposition." SMC 2.04.300.

The petitioners, citing *State v. Evergreen Freedom Foundation*, 192 Wn.2d 782, 794-95, 432 P.3d 805 (2019), argue that this court has previously rejected Councilmember Sawant's suggestion that a ballot proposition is limited to propositions

17

that have been filed with an elections officer or circulated for signatures. The petitioners assert the prohibitions in RCW 42.17A.555 apply to actions taken before the initiative was filed and contest Councilmember Sawant's reading of an SEEC advisory opinion as an incorrect interpretation. Resp'ts' Answering Br. at 17-18. The petitioners round out their arguments stating that Councilmember Sawant failed to disclose her involvement with the Tax Amazon movement, and as a result, her conduct violates SMC 2.04.165.

Councilmember Sawant argues this charge is legally insufficient because the contemplated initiative had not been filed on the date she allegedly engaged in misconduct and cannot form the basis for a violation of RCW 42.17A.555 or SMC 2.04.300. Councilmember Sawant also argues that the petitioners failed to allege that she intended to violate SMC 2.04.300 or RCW 42.17A.555 given her sworn statements that she reasonably believes an issue of interest is not a ballot proposition as defined by city and state law. Councilmember Sawant contends that an SEEC advisory opinion supports her position because, in her reading, "'[RCW 42.17A.555] and SMC 2.04.300 only prohibit use of facilities to promote or oppose a ballot issue,'" and she concludes that using city facilities to oppose the issue of interest does not violate campaign law. Br. of Appellant at 27 (alteration in original) (quoting SEEC, Advisory Op. 94-1E (1994)).

As the judge below noted, the purpose of RCW 42.17A.555 "was to ban the use of government resources for ballot measures" and the language of the statute broadly encompasses conduct in promoting a ballot measure before it is filed. 2 CP at 207. SMC 2.04.300 contains a similar prohibition and is broader than 42.17A.555.

18

No. 99089-1

Both *Evergreen Freedom Foundation* and the SEEC advisory opinion instruct our analysis. The issue in *Evergreen Freedom Foundation* was the applicability of RCW 42.17A.005(4), which is analogous to SMC 2.04.010, in the context of a local initiative. 192 Wn.2d at 785. The Evergreen Freedom Foundation (EFF) staff drafted sample ballot propositions for citizens to champion specific causes to their local city councils. *Id*. at 786. Advocates submitted the sample ballot propositions to city clerks in Sequim, Chelan, and Shelton, in addition to the signatures they had gathered in support of the measures. *Id*. "None of the cities passed the measures as ordinances or placed the ballot propositions on local ballots." *Id*. EFF did not file any campaign finance disclosure reports with the PDC identifying independent expenditures made in support of the local ballot proposition. *Id*. at 787. EFF argued that "because the local initiative process generally requires signatures to be gathered and submitted before the ballot propositions are filed with the local elections official, the local propositions were not 'ballot propositions' under RCW 42.17A.005(4) and, therefore, no disclosure was required unless and until the proposition became a 'measure' placed on a ballot." *Id*. at 788.

The *Evergreen Freedom Foundation* opinion discussed the history of chapter 42.17A RCW, noting the legislature intended the definition of a ballot proposition to include "local propositions 'from and after the time when such proposition has been initially filed with the appropriate election officer . . . *prior to its circulation for signatures*.'" *Id*. at 792 (emphasis added) (alteration in original) (quoting LAWS OF 1975, 1st Ex. Sess., ch. 294, § 2(2)). The court went on to discuss the process local initiatives

19

No. 99089-1

go through for submittal. "[T]he proponent generally gathers signatures and submits them along with the proposed ballot measure to the local election official." *Id*. at 793; *see also* RCW 35.17.260. "If the petition contains the required number of valid signatures, the city's or the town's council or commission must either pass the proposed ordinance or submit the proposition to a vote of the people." *Evergreen Freedom Foundation*, 192 Wn.2d at 793. The court acknowledged that RCW 42.17A.005(4) expressly applies to local initiatives and held that "RCW 42.17A.005(4) was intended to pick up the expenditures prior to signature gathering, regardless of when they are gathered, but only if the measure is actually filed with an election official. . . . [As a result, EFF's] legal services were reportable to the PDC under . . . RCW 42.17A.005(4)." *Id.* at 796.

Like *Evergreen Freedom Foundation*, a ballot measure was at issue in the SEEC advisory opinion. SEEC, Advisory Op. 94-1E, *supra*. However, the question posed before the SEEC examined whether city council members could provide a statement in opposition to the proposed ballot measure. *Id.* The SEEC advised that the elections code does not exclude council members from using city funds and facilities "to make a statement in response to a specific request for an opinion regarding a ballot issue." *Id.*

The petitioners' argument that the court has rejected a version of Councilmember Sawant's argument in *Evergreen Freedom Foundation* and that Councilmember Sawant misreads the SEEC opinion is correct—RCW 42.17A.555 applies to actions taken before the initiative. Councilmember Sawant's conduct of promoting and drafting language for

20

No. 99089-1

the Amazon tax initiative prior to and during the Tax Amazon conference mirrors EFF's conduct of drafting and encouraging advocates to file a ballot initiative in their local city councils. And, similar to how EFF's purpose in creating and promoting a ballot proposition was to champion specific cases to their local city councils, Councilmember Sawant's purpose in creating a ballot proposition was to "'to file a grassroots ballot initiative [in] February.'" 1 CP at 161-62. As the *Evergreen Freedom Foundation* court concluded, the language in RCW 42.17A.005(4), which defines a ballot proposition, was intended to pick up the expenditures prior to signature gathering and Councilmember Sawant's conduct of drafting and promoting the Amazon tax initiative falls under the prohibited conduct of the Fair Campaign Practices Act. Likewise, the SEEC advisory opinion is inapplicable in this case because Councilmember Sawant was not providing a statement in support or opposition of the Tax Amazon campaign, nor had she been requested to draft a response to the campaign. As noted above, Councilmember Sawant was one the originators of the Tax Amazon campaign.

Councilmember Sawant's argument that she did not violate RCW 42.17A.555, [2] SMC 2.04.300, and SMC 4.16.070(B)(2), is a decision for the voters to make. The charge is legally sufficient.

---

[2] Although, it should be noted there is a typographical error in the original charge. It read, "42.17A.55."

21

No. 99089-1

Disregarding State Orders Related to COVID-19 and Endangering the Safety of City Workers and Other Individuals by Admitting Hundreds of People into City Hall on June 9, 2020, When It Was Closed to the Public.

Petitioners allege that Councilmember Sawant "[d]isregarded state orders related to COVID-19 and endangered the safety of city workers and other individuals by admitting hundreds of people into city hall on June 9, 2020, when it was closed to the public." *Id*. at 2. The statement of charges allege that Councilmember Sawant,

> [u]sing her official position as a City of Seattle Councilmember, . . . gave access to City facilities to admit hundreds of individuals at night into City Hall on or about the night of June 9, 2020, when it was closed to the public because of COVID-19 and fail[ed] to follow the City's COVID-19 precautions for the visitors. Her actions put the safety of individuals and City workers at risk, and it led to janitorial staff making complaints about the incident because of safety concerns. Councilmember Sawant's actions constitute malfeasance, and a violation of her duties under Seattle Charter. She flouted the Order of the Washington Secretary of Health (20-03) and Washington State Governor Jay Inslee's Proclamation (20-05, as amended and extended), proclaiming a statewide State of Emergency due to the coronavirus disease 2019 (COVID-19), and in doing so she endangered the peace and safety of the community.

3 CP at 249-50. The trial judge found this charge factually and legally sufficient.

A. Factual Sufficiency

Councilmember Sawant does not appear to contest the factual sufficiency of this charge.

B. Legal Sufficiency

On February 29, 2020, Governor Inslee issued Proclamation 20-05. Governor Inslee amended this order with Proclamation 20-25.2 on May 4, 2020, imposing the "Stay at Home – Stay Healthy" order, which prohibited "all people in Washington State from

22

No. 99089-1

leaving their homes or participating in gatherings of any kind, regardless of the number of participants." 1 CP at 114.

On June 9, 2020, Seattle City Hall was closed to the public pursuant to the governor's proclamation. The Seattle City Council, citing the governor's proclamation, prohibited in-person attendance at city hall until June 17, 2020. JOURNAL OF THE PROCEEDINGS OF THE SEATTLE CITY COUNCIL, June 1, 2020, at 1; http://legistar2.granicus.com/seattle/attachments/5f455733-b5d9-431e-9936-bac7f47312dd.pdf.

Councilmember Sawant contends that protesting has been a core value of her time in office. Councilmember Sawant asserts that when she used her key to let protestors into Seattle City Hall on June 9, she was exercising her right to protest. Those at the protest took turns speaking, sharing songs, and chanted about removing Mayor Jenny Durkan from office. When Councilmember Sawant was asked why she brought the protestors into City Hall, she said it was "essential that the power and uprising evident in the streets be seen in the halls of power in Seattle." 1 CP at 107.

The trial judge reasoned this charge was factually sufficient because petitioners' knowledge was based on Councilmember Sawant's retweets that she had a key to city hall. However, the judge grappled with the question of whether Councilmember Sawant intended to violate the governor's proclamation and concluded that her alleged act of unlocking the building and letting the protestors in "inferentially proves the intent needed to allow the charge/allegation to go forward." 2 CP at 210.

23

No. 99089-1

The petitioners assert that Councilmember Sawant violated the governor's emergency proclamation on public gatherings and the SMC, which prohibited using city property for anything "other than a City purpose." SMC 4.16.070(B)(2); Resp'ts' Answering Br. at 22. The petitioners, citing *In re Recall of White*, 196 Wn.2d 492, 474 P.3d 1032 (2020), and *Fortney*, argue these cases support the assertion that not only do public officials have a duty to follow those laws but public officials also violate their oath of office when they endanger the peace and safety of their communities by inciting the public to violate those laws. Petitioners contend Councilmember Sawant violated her oath to uphold the charter and ordinances of the City of Seattle. RCW 29A.56.110 (2). The petitioners argue that Governor Inslee's proclamation was written in an expansive manner, which prohibited "'all people' from participating in 'public gatherings. . . of any kind.'" Resp'ts' Answering Br. at 24 (alteration in original). The petitioners assert that the "First Amendment does not protect the unlawful occupation of a government building after hours." *Id*. at 25.

Councilmember Sawant responds that the governor's proclamation did not prohibit political protests—Governor Inslee publicly recognized the right to "'free speech and peaceful assembly.'" Br. of Appellant at 30. Furthermore, Councilmember Sawant contends there is no legal basis to conclude that she did not have the discretion to bring people into city hall. Councilmember Sawant notes that in the past, she has routinely brought guests with her for after-hours meetings and political protests. And, Councilmember Sawant states she was unaware that city hall was closed on June 9, 2020,

24

No. 99089-1

and she had no reason to believe that she lacked authority to bring guests with her into city hall after hours.

*White* helps to inform our analysis. In *White*, there were three charges brought against Councilmember White, a member of the Yakima City Council. 196 Wn.2d at 498. The most relevant charge alleged that Councilman White used "'his position as an elected official to wrongfully encourage citizens to disobey state and local COVID-19 emergency proclamations that ordered everyone to stay home unless they need to pursue an essential activity.'" *Id*. at 498. The trial judge found this factually and legally insufficient. We affirmed, noting that

> beyond the bare assertion that Councilmember White had a duty to uphold the law and not interfere with other public officials' executions of their duties, no standard, law, or rule he allegedly violated has been identified. Nothing in the Governor's "Stay Home – Stay Healthy" proclamation demands the allegiance of local legislators, and such a requirement would raise immediate constitutional concerns.

*Id.* at 502. The *White* court also noted that legislators do not have a general duty to enforce public health orders or to abstain from criticizing the actions of other public officials. *Id.* at 502-03. Accordingly, "[w]hile the governor's Stay Home – Stay Healthy order has the force of law, Councilmember White's oath-bound duty to support the law cannot reasonably be construed within our system of divided government as an obligation not to criticize the law." *Id*. at 504.

As the court observed in *White*, there was nothing in Governor Inslee's "Stay Home – Stay Healthy" order to demand Councilmember Sawant's allegiance to enforce the stay at home order. And, as the *White* court points out, Councilmember Sawant's

No. 99089-1

oath-bound duty to support the law cannot reasonably be construed as an obligation not to criticize the law. As the *White* court notes, "[S]uch a requirement would raise immediate constitutional concerns." *Id.* at 502. In addition, the petitioners' citation to *Fortney* is inapplicable. Adam Fortney is a Snohomish County sheriff, and as a sheriff, he has statutory duties to uphold and enforce the law. *Fortney*, 196 Wn.2d at 775. Again, Councilmember Sawant has no such duty.

Like Councilmember White, Councilmember Sawant was within her right to encourage citizens to protest. However, that is where the similarities between these two cases end. By opening city hall when it was closed to the public in response to the governor's Stay Home – Stay Healthy order, Councilmember Sawant arguably obstructed city business and placed people at risk by failing to ensure social distancing and sanitation measures established by the Washington State Department of Health guidelines.

The discretionary acts of a public official generally are not a basis for recall, so long as those acts were appropriately exercised by the official during the performance of their official duties. *In re Recall of Bolt*, 177 Wn.2d 168, 174, 298 P.3d 710 (2013) (citing *Cole v. Webster*, 103 Wn.2d 280, 283, 692 P.2d 799 (1984)). As we recently reiterated in *Durkan*, "'[a]n official may be recalled for execution of discretionary acts only if the execution of that discretion is done in a manifestly unreasonable manner,'" which "'may be shown by demonstrating discretion was exercised for untenable grounds

26

No. 99089-1

or for untenable reasons.'" 196 Wn.2d at 664 (alteration in original) (internal quotation marks omitted) (quoting *Inslee*, 194 Wn.2d at 572).

While it may be true that Councilmember Sawant had discretion to admit members of the public to city hall on other occasions, Councilmember Sawant knew the council had closed city hall to the public in response to the governor's Stay Home – Stay Healthy order as she voted to permit the council itself to meet remotely. Moreover, her action of letting protestors into city hall was not related to a city purpose. As she states, she opened city hall because it was "essential that the power and uprising evident in the streets be seen in the halls of power in Seattle." 1 CP at 107. To the extent that Councilmember Sawant had discretion to admit people to city hall, we believe the voters are entitled to decide whether she exercised her discretion in a manifestly unreasonable manner or exercised for untenable reasons.

Leading a Protest March to Mayor Jenny Durkan's Private Residence, the Location of Which Councilmember Sawant Knows Is Protected under Confidentiality Laws

Petitioners allege that Councilmember Sawant "[l]ed a protest march to Mayor Jenny Durkan's private residence, the location of which Sawant knows is protected under state confidentiality laws." *Id*. at 2. The statement of charges discuss how Councilmember Sawant

> [u]s[ed] her official position as City Councilmember to Lead a Protest March to Mayor Jenny Durkan's private residence whose location is confidential. Councilmember Sawant used her official position to lead a protest march to Mayor Durkan's home, despite the fact that [it] was publicly known that Mayor Durkan was not there, and she and organizers knew that Mayor Durkan's address was protected under the state

27

No. 99089-1

confidentiality program because of threats against Mayor Durkan, due largely to her work as US Attorney for Western Washington under the administration of President Obama. All of us have joined hundreds and thousands of demonstrations across the City, but Councilmember Sawant and her followers chose to do so with reckless disregard of the safety of Mayor Durkan's family and children. In addition, during or after Councilmember Sawant's speech at that rally, her followers vandalized Mayor Durkan's home by spray-painting obscenities on the fence around her residence. Councilmember Sawant willfully and intentionally violated her duties under RCW 9A.46, RCW 9A.76, and Seattle Charter Art. IV, Sec[s.] 2 and 4 and her oath of office. Councilmember Sawant's actions are a violation of the Washington State Address Confidentiality Program (RCW 9A.46), as Sawant knew that Mayor Durkan's home address is protected. Sawant's actions are also a violation of RCW 9A.76.180, which prohibits intimidation and threats against a public employee such as the Mayor. The intimidation of public employees has now spread to other homes of elected officials who don't follow Sawant's agenda and has been condemned in [an] editorial of the Seattle Times on July 31, 2020 where Sawant reaffirmed her actions.

3 CP at 251-52; 2 CP at 210-11. The trial court ruled this charge to be factually and legally sufficient.

A. Factual Sufficiency

On or about June 28, Councilmember Sawant, as a private citizen, attended a protest in the Windermere neighborhood believed to be where Mayor Durkan lives. While she attended and spoke during the protest, Councilmember Sawant says she did not take part in organizing the protest.

Councilmember Sawant averred that this neighborhood was chosen first as a protest target for being predominately white and wealthy, and second because this neighborhood falls in her district, Seattle City Council District 3. However, she says that she does not know, nor has she ever known, the home address of Mayor Durkan.

28

Mayor Durkan contended that during or after the rally, protesters vandalized and spray painted obscenities all over her house. In response to Councilmember Sawant's protesting in front of her house, Mayor Durkan wrote a letter to the Seattle City Council requesting Councilmember Sawant's removal from office. This letter leveled five allegations against Councilmember Sawant. It included the fact Councilmember Sawant used her official position to lead the march to the mayor's home, even though it was public information that the mayor was not at her house, and that Councilmember Sawant and the organizers knew that the mayor's address was protected under the state confidentiality program, given her work as a United States attorney. The council declined Mayor Durkan's request to remove Councilmember Sawant, citing "the pandemic, police brutality and mass job losses" as the reason. *See* Stiles, *supra*.

The trial judge found the factual prong was supported because the allegations that Councilmember Sawant "'used her official position to lead a protest march,'" and "'she and her organizers knew her address was protected'" are very specific. 2 CP at 211. The judge acknowledged that Councilmember Sawant disputes that "she knew the address of the Mayor or led the protest march" but concluded that it is not the role of the trial court to determine the truth of the allegations. *Id*.

The petitioners argue that Councilmember Sawant's conduct clearly amounted to a threat that caused physical damage to Mayor Durkan's property that was intended to either substantially harm the mayor's physical or mental health of safety. The petitioners assert that "[b]arring a remarkable coincidence by which the protestors ended up in front

29

of the home belonging to Mayor Durkan, and not one of these hundreds of thousands of other Seattleites, it is reasonable to infer that whoever led the protest knew Mayor Durkan's address." Resp'ts' Answering Br. at 32-33. In support of this assertion, the petitioners point to the fact that there was evidence that Councilmember Sawant stood in front of the march and held a microphone.

Councilmember Sawant argues that this charge is factually insufficient because petitioners offer no evidence to support the claim that she knew where Mayor Durkan lived, or revealed this information to the organizers of the protest, or intended to violate any law. Councilmember Sawant calls the petitioners' argument conclusory in pointing to Mayor Durkan's statements to support the argument that she knew where the mayor lived. Furthermore, Councilmember Sawant states that she did not organize the march.

As noted, this court does not weigh the facts but instead determines whether there are sufficient facts to allow the charge to go before the voters. We agree with the trial court's conclusion that the facts are sufficient for voters to conclude that information shared by Councilmember Sawant led the protesters to Mayor Durkan's home. Although she says she did not organize the protest, it is no coincidence that the protestors found themselves in front of Mayor Durkan's house. Further, since the subject of Councilmember Sawant's speech at the protest was Mayor Durkan, a voter could find that Councilmember Sawant intended to protest at the mayor's home and went to the mayor's home to deliver a message to her. This charge is factually sufficient for a recall.

No. 99089-1

B. <u>Legal Sufficiency</u>

Councilmember Sawant argues this charge is legally insufficient because chapter 9A.46 RCW, chapter 9A.76 RCW, and Seattle City Charter article IV, sections 2 and 4, and her oath of office, do not make it unlawful to disclose the address of a person enrolled in the address confidentiality program.

Chapter 9A.46 RCW sets forth the statutory law on criminal harassment. A person's acts and threats to invade another person's privacy can be criminalized when these acts specifically "show a pattern of harassment designed to coerce, intimidate, or humiliate the victim." RCW 9A.46.010. A person's conduct can constitute criminal harassment when

> (a) Without lawful authority, the person knowingly threatens:
> (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
> (ii) To cause physical damage to the property of a person other than the actor; or
> (iii) To subject the person threatened or any other person to physical confinement or restraint; or
> (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety.

RCW 9A.46.020(1). A person who harasses another is guilty of a gross misdemeanor. RCW 9A.46.020(2)(b). In addition, a person may be criminally liable for their conduct when they obstruct governmental operations. Ch. 9A.76 RCW. One way for someone to obstruct governmental operations is to intimidate a public servant. RCW 9A.76.180. A person may be found guilty of intimidating a public servant "if, by use of a threat, he or she attempts to influence a public servant's vote, opinion, decision, or other official

31

No. 99089-1

action as a public servant." RCW 9A.76.180(1). Threats include "the intent immediately to use force against any person who is present at the time." RCW 9A.76.180(3)(a). It is a class B felony to intimidate a public servant. RCW 9A.76.180(4).

RCW 40.24.030 operates in conjunction with RCW 9A.46.020. It provides that "any criminal justice participant as defined in . . . RCW 9A.46.020 (2)(b) (iii) or (iv)" may apply to the secretary of state for address confidentiality. RCW 40.24.030(1)(b). Under RCW 9A.46.020(4) "a criminal justice participant includes any (a) federal, state, or local law enforcement agency employee; (b) federal, state, or local prosecuting attorney or deputy prosecuting attorney." RCW 40.24.030 does not provide a penalty for disclosure of confidential information of a person protected by the address confidentiality program.

As to the allegation that Councilmember Sawant's actions amounted to criminal harassment, we find this portion of the charge to be legally insufficient. While it is true that protestors defaced and damaged Mayor Durkan's home, there is no support offered showing that Councilmember Sawant herself threatened to cause bodily injury or physical harm to property; or that she exhorted others to engage in such conduct; or that by use of a threat, she attempted to influence the mayor's vote, opinion, decision, or other official action. While Mayor Durkan is a criminal justice participant and a voter may believe Councilmember Sawant knew the mayor was in the address confidentiality program, it does not appear that merely revealing the mayor's address violates either

No. 99089-1

RCW 9A.46.020 or RCW 40.24.030. Thus, we conclude that the allegation that Sawant violated harassment statutes is not legally sufficient.

However, petitioners also allege that Councilmember Sawant's conduct in marching on Mayor Durkan's private residence violated Seattle City Charter article IV, sections 2 and 4, and her oath of office. Specifically, petitioners argue that SMC 4.16.070(D)(1) prohibits council members from disclosing any "confidential information gained by reason of his or her official position for other than a City purpose." Based on the facts alleged, we believe a voter could conclude that Sawant's actions constituted a violation of the Seattle city code regarding confidentiality. This charge is legally sufficient.

Ballot Synopsis

On September 18, 2020, the trial court considered Councilmember Sawant's motion to modify the ballot synopsis proposed by the King County Prosecuting Attorney's Office. Councilmember Sawant argues that the superior court adopted an inaccurate ballot synopsis that communicates to voters that she committed the acts contained in the synopsis and urged several revisions to the language. Br. of Appellant at 36-37. RCW 29A.56.140 is clear that "'[a]ny decision regarding the ballot synopsis by the superior court is final.'" *West*, 155 Wn.2d at 664 (quoting RCW 29A.56.140). Accordingly, we decline to address Councilmember Sawant's challenges to the ballot synopsis.

33

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99089-1

CONCLUSION

We affirm the trial court, in part, and hold that petitioner's charge that Councilmember Sawant used city resources to promote a ballot initiative and failed to comply with public disclosure requirements, disregarded state orders related to COVID-19 and endangered the safety of city workers and other individuals by admitting hundreds of people into city hall while it was closed to the public, and led a protest march to Mayor Jenny Durkan's private residence, the location of which Councilmember Sawant knew was protected under state confidentiality laws, are factually and legally sufficient to support recall. We hold petitioner's charge that Councilmember Sawant delegated city employment decisions to a political organization outside city government and a portion of the charge that Councilmember Sawant's actions in divulging the location of Mayor Durkan's private residence amounted to criminal harassment in violation of RCW 9A.46.020 are legally insufficient. We decline to reach Councilmember Sawant's challenges to the ballot synopsis.

No. 99089-1

_____
Madsen, J.

WE CONCUR:

_____        _____
González, C.J.                          Gordon McCloud, J.

_____        _____
Johnson, J.                             Yu, J.

_____        _____
Owens, J.                               Montoya-Lewis, J.

_____        _____
Stephens, J.                            Whitener, J.